DECISION
Plaintiffs appeal Deschutes County Assessor's (Assessor) letter stating that Plaintiffs' property identified as Account 187061 (subject property) no longer qualified for the Deschutes County Habitat Conservation and Management program. A trial was held before Magistrate Jeffrey S. Mattson in the Oregon Tax Courtroom on October 15, 2010. Kyle Schmid, Attorney at Law, appeared on behalf of Plaintiffs. Darrin Kelleher (Darrin) and Nancy Kelleher (Nancy) testified on their own behalf.[1] Laurie Craghead, Deschutes County Counsel, appeared on behalf of Defendant Assessor. Douglas Adair, Senior Assistant Attorney General, appeared on behalf of Defendant Department of Fish and Wildlife (ODFW). The following individuals testified on behalf of ODFW: Glen Ardt (Ardt), Wildlife Habitat Biologist, Deschutes Watershed District, ODFW; Steve George (George), Wildlife Biologist, ODFW; Larry Pecenka (Pecenka), Habitat Biologist and Manager of Wildlife Habitat Conservation and Management Program, ODWF; Patty Snow (Snow), Land and Water Use Coordinator, ODFW; Amy Stuart (Stuart), Deschutes Watershed Manager, ODFW. *Page 2 
Plaintiffs' Exhibits 1 through 5, Assessor's Exhibits A and B, and ODFW's Exhibits A through E were admitted without objection.
 I. STATEMENT OF FACTS
On March 31, 2004, ODFW notified Assessor that the subject property, 19.45 acres, was certified to participate in the Wildlife Habitat Conservation Management Program (Program.) (ODFW's Ex A at 10, 11.) Snow testified about the Program's history, special assessment for qualifying property and the need for periodic monitoring of the program participants.
George testified that participants in the program agree to comply with an approved Wildlife Habitat Conservation Management Plan (Plan). (Id. at 12 — 38.) He testified that an entire tax lot is "required to enroll" in the program and that "partial tax lots" are not permitted. George noted a Plan requires that existing structures are fully described, "management practices which will be used to achieve and or maintain the Habitat types listed, and time frames for implementation of these practices" are detailed, including for this subject property grazing practices. (See id. at 14, 15.)
Pecenka testified that, in 2004, he "took over monitoring the wildlife program." He stated that on April 11, 2005, Plaintiffs were sent their "first non compliance letter." (See id. at 41.) In that letter, Plaintiffs were advised that they were out of compliance for: (1) their grazing practice; (2) having two buffalo on the subject property; and (3) grass height. (Id.) The letter stated that the out of compliance "activities must be corrected within six (6) months of the date of this letter to retain this 19.45 acre property in the [Program.]" (Id. at 42.) Three ODFW employees visited the subject property on April 14, 2005, "to discuss non-compliance issues." (Id. at 74.) According to the "history of Kelleher WHCMP enrollment," "[l]andowner indicated an interest in building a shop. ODFW staff made it clear to the landowner must first contact *Page 3 
ODFW with a description of any new developments on the property for ODFW review of a proposed plan amendment." (Id.)
Pecenka drove by the subject property on December 22, 2005, and "observed livestock on property (grazing during season not agreed to)."(Id.) After checking with George, "Pecenka was informed that George gave approval to the landowner request to bring livestock onto property to accommodate livestock care during holiday season." (Id.)
Pecenka testified that the next visit to the subject property was in August or September 2007. He testified that, at that visit, it was discovered Plaintiffs applied for a permit to build a garage in November 2005. (Id at 55.) Pecenka testified that the application was made without notice to ODFW, [without] submitting the proposed WHCMP plan amendment to ODFW, and [without] ODFW approval as required by [OAR] 635-430-0070 and as verbally stated to landowner on 4-14-05 by ODFW staff." Id.) Pecenka referenced a copy of a "generic letter," dated December 26, 2007, and signed by him, which advised participants that approximately 65 percent were "following their WHCMP plans" and the remaining 35 percent were "in non-compliance with the signed plan[s]." He further stated that resulted in "ODFW taking acting to help the landowner get back in compliance or to help the landowner remove their property from program enrollment." (Id. at 70.) Pencenka referred to another generic letter, dated March 9. 2009, which stated that "ODFW has removed 18 properties from WHCMP enrollment withback-tax consequences to those landowners [and] [a]nother 10 propertiesare teetering on the brink of removal"(Id. at 110 (emphasis in original).)
Ardt testified that, in February 2008, he made his first contact with Plaintiffs. He issued a non-compliance letter, dated February 19, 2008.(Id. at. 73.) The letter questioned whether Plaintiffs intended "to meet the objectives of the WHCMP [and schedule a meeting] to discuss *Page 4 
how [Plaintiffs planned] to meet WHCMP objectives. (Id.) Ardt testified that he and Stuart visited the subject property on March 3, 2009. ODFW memorialized the verbal agreement with Plaintiffs "to bring the plan back into compliance" in a letter dated March 14, 2008. (See id. at 80.) That letter provided a table, entitled Tree, Shrub and Bunchgrass Recommendations "to pick from for the irrigated SE Corner Pasture Area and around the Pond." (Id.) The letter instructed Plaintiffs to:
 "[p]lant at least three different shrub species around the pond * * *along with two tree species and five different shrub species in the pasture area. Within two years, plan 1/3 or more of each of the areas in a combination of trees, shrubs and bunchgrass, in a mosaic pattern or in patches (call if you have other species you want to include or questions regarding specifics that we didn't discuss[.]"
(Id.) On September 10, 2008, Plaintiffs wrote to Ardt, responding to Ardt's letter. (Id. at 82-84.) On September 23, 2008, Ardt responded to Plaintiffs and suggested various updates to the Plan. (Id. at 86-87.) On November 14, 2008, Ardt wrote to Plaintiffs, thanking Plaintiffs for "dropping of a revised Wildfile Habitat Conservation and Management Plan (WHCMP)[.]" (Id. at 88.) He commented on the "notable change * * * to increase grass height to 9 inches during the growing season from March 1st — October 1st to better meet the grassland objectives the plan was setup to provided." (Id. at 88.) On December 9, 2008, Ardt wrote to Plaintiffs, attaching a copy of the "modified plan [setting] aside the south east corner of your property solely for wildlife and [modifying the] grazing strategy so that 9 inches or greater grass height is always in the grazed potion of your property 12 months of the year, with a 4 inch or greater grass height in the enclosed pond area." (Id. at 99.) Ardt wrote that "[a]n alternate strategy is to graze 1/3 of *Page 5 
the pasture with no minimum grass height retention, while deferring the other 2/3rds from grazing for the year." (Id.) The modified Plan noted:
 "15. Management practices * * *.
 "* * * * *
 "* * * The irrigated pasture in the southeast area of the subject property will remain as fenced. The east property line of this area has no climb fencing and the south property line along Bear Creek Road and along the paved driveway to the west has four rail wood fencing. This area will be dedicated 100% to livestock free wildlife habitat area and will be planted with trees, shrubs and bunch grasses, per ODFW 3/14/08 recommendation, by May 31, 2009.
 "* * * * *
 "The applicant will maintain a minimum of 4" grass height around the pond area. Some wetland plants will be planted along the outer edge of the pond area. A large juniper snag will be placed in the pond, along with other wetland plants (mini cattails, lilies, etc.)"
(Id. at 103.) According to the agreement, the pond area was to be completed by March 14, 2010.
Darrin testified that those problems were corrected. He testified that weeds are a "key problem" and there is a "continual effort [to] pull" and keep the weeds under control. Nancy testified that they "weed every two weeks" and "spray [to] keep weeds under control." Darrin testified that he "thinks homesite including garage" is taxable and he did not know that to construct a garage would be "within the plan" and require approval.
Pecenka testified that he visited the subject property on August 20, 2009, and September 3, 2009. He testified that the purpose of his visits were to "view the shrubs." Pecenka took photographs from the roadway; he testified that he did not enter the subject property. He testified that there was "no evidence of shrubs" and the weeds from "prior years" *Page 6 
were "still in existence." On September 10, 2009, Pecenka wrote to Assessor, reciting Plaintiffs' "[h]istory of non-compliance." (Id. at 112.) He further stated
 "In a letter dated March 14, 2008 from ODFW to Kelleher, and confirmed in an email from Kelleher to ODFW dated September 10, 2008, it was agreed to modify the WHCMP plan to include planting 1/3 or more of each area (the irrigated SE Corner Pasture Area and around the Pond) in a combination of trees, shrubs and bunchgrasses per ODFW recommendation by May 31, 2009.
 "It was observed on August 20, 2009 that the irrigated SE Corner Pasture and around the Pond did not have 1/3 or more of each area planted in a combination of trees, shrubs and bunchgrasses.
 "Additional non-compliance is now involving lack of noxious weed control on the property (see photos dated August 20, 2009). Bull thistle, spotted knapweed and common mullein were observed growing and going to seed on the property.
 "* * * * *
 "In letters dated December 26, 2007 and March 9, 2009 (attached) from ODFW to all WHCMP participants, it was clearly stated that ODFW takes landowner compliance with their approved plans and the rules of the WHCMP very seriously.
 "This is a continuing history of this landowner not meeting the rules of WHCMP and the obligations they agreed to in their ODFW approved plan. There are now seven (7) non-compliance events by this landowner during the five (5) year history of property enrollment in this program.
 "ODFW request that this property (171333D000500) be removed from WHCMP enrollment."
(Id. at 112-113.) Pecenka testified that the "sole reason" the subject property should be removed from the program was that there "were no trees or shrubs planted as required by May 31, 2009." On cross-examination, Plaintiffs' counsel disputed that no trees or shrubs had been planted, stating that Plaintiffs' landscaper, Mr. Aldrich, planted shrubs in June or July, 2009, and noting that "seven plants there.[2]" Ardt testified that the decision to request that the county assessor remove the subject property "from WHCMP enrollment [was] made by a group, not one single *Page 7 
person." Ardt agreed with Pecenka that the reason for the requested removal was that there were "no shrubs in the pasture area." He testified that he met with Nancy on September 11, 2009, and put Plaintiffs' concerns in an email to Amy Stuart. (Id. at 114-115.)
On September 11, 2009, Assessor notified Plaintiffs that the subject property's special assessment "of Wildlife Deferred land* * * has been disqualified by the Assessor for the following reason.
 "The land is no longer in a qualifying use and has been disqualified from the following program:
 Wildlife Habitat plan not being implemented as approved. ORS 308A.430(2)(a)."
(Assessor's Ex B at 1 (emphasis in original).)
Stuart testified that she, Ardt, and Pecenka met with Plaintiffs on October 6, 2009. She summarized that meeting in a letter dated October 26, 2009, to Plaintiffs and reiterated Plaintiffs' "history of non-compliance," and stated that "[t]hese infractions were noted in spite of letters sent to all landowners participating in the program on December 26, 2007, and March 9, 2008, to remind them about observing conditions set forth in their plans." (ODFW's Ex A at 122 — 123.)
Darrin testified that he thought the "mitigation plan, including the shrubs for the southeast area" was a "modification" to the plan. He testified that he "thought he would have a final chance to cure." Darrin testified that they "did planting before the deadline," hir[ed] a landscaper and rent[ed] a tractor." He testified that he ran into a problem with "rocky areas, including bedrock throughout." Nancy testified that "the growth was stunted after planting" by the rocks. Darrin testified that the landscaper planted "15 plants" and there were "14 to 15 hours" of work with the planting completed "before the deadline, mid-May." Plaintiffs submitted a copy of Ken Aldrich's business card and a handwritten list of 15 trees, with a total *Page 8 
cost of $202. (Ptfs' Ex 3 at 19.) Plaintiffs also submitted an invoice from Aldrich, dated June 1, 2010, for "12 — 5 — GAL PLANTS PLANTED" and one tree, stating a total cost of $317. (Id. at 21.) Darrin referenced photographs. (See Ptfs' Ex 4.) Nancy testified that "some after photographs were taken three weeks ago." On cross examination, Darrin admitted that there are "some growth problems" related to the soil. Nancy testified that the "minimum required — one third acre — was planted with 40 or more plants prior to the deadline."
Darrin testified that he is "still operating within the Plan." Nancy testified that they have a "commitment to the land." Darrin testified that no one "visited within the boundary of the subject property" before concluding that Plaintiffs were in violation of the Plan. Darrin testified that, before being taken out the program and a "substantial penalty being imposed," he does not understand why he did not have "an opportunity to cure."
 II. ANALYSIS
ORS 308A.409(1)(a)[3] provides that "[t]he State Fish and Wildlife Commission shall adopt rules specifying the form and content of a wildlife habitat conservation and management plan that is sufficient for land that is subject to the plan to be specially assessed under ORS 308A.403 to 308A.430." The subject property was certified to participate in the Program on March 31, 2004. The ODFW promulgated rules detailing plan submission and review procedures, and amendments to approved plans.[4] As part of the certification process, Plaintiffs' Plan was approved. Subsequently, ODFW determined that Plaintiffs were not in compliance with their approved Plan. In an effort to keep Plaintiffs in the Program, ODFW and *Page 9 
Plaintiffs entered into a seven month discussion of corrective actions required "to bring the plan back into compliance." (ODFW's Ex A at 80.)
Each party characterizes the dispute slightly different. Plaintiffs state that the "sole issue before this Court is as follows:
 "I. Can a property enrolled in the Wildlife Habitat and Conservation Management Program (the "Program") that is subject to an amended management plan as provided by OAR 635-430-0070, be lawfully disqualified when ODFW fails to identify and allow for compliance measures as required by ORS 635-430-0080(4) and 635-430-0090(5)?"
(Ptfs' Closing Statement at 1 — 2.) ODFW states that the issue is whether "the mitigation actions incorporated into the revised plan to compensate for the prior non-compliance event were compliance measures — corrective actions required to bring the Kellehers back into compliance — or simply new plan requirements for which a new notice of non-compliance was required along with an additional six months for corrective action[.]" (ODFW's Post-Trial Memo at 1.)
To resolve the dispute, the court looks at the parties' written correspondence. The following string of correspondence supports the conclusion that the parties were working together to amend and revise the original Plan.
In a letter dated March 14, 2008, Ardt wrote:
 "We agreed to the following to bring the plan back into compliance:
 "You would redraw the WHCMP plan map by including the garage and a garden area next to the garage.
 "Modify the plan to remove livestock grazing * * *.
 "Modify the plan by planting trees and shrubs around the pond to enhance the wildlife habitat.
 "Please send ODFW the modified plan within six months (September 14, 2008.)"
(ODFW's Ex A. at 80.) *Page 10 
In a letter dated September 10, 2008, Plaintiffs wrote:
 "This letter is in response to your letter dated March 14, 2008, pertaining to modifying our original wildlife plan to bring our plan back into compliance. Following are the modifications to the original plan, listed by item number[.]
 "* * * * *
 "We look forward to hearing from you regarding the modification of our plan."
(Id. at 82.)
In a letter dated September 23, 2008, Ardt wrote:
 "Following are comments regarding your September 10, 2008 proposed changes to your Wildlife Habitat Conservation and Management Plan (WHCMP). Please * * * incorporate these comments into your original WHCMP and return to me * * * ."
(Id. at 86.)
In a letter dated November 14, 2008, Ardt wrote:
 "Thank you for dropping off a revised Wildlife Habitat Conservation and Management Plan (WHCMP) for department review. Attached and following are recommended changes."
(Id. at 88.)
In a letter dated December 9, 2008, Ardt wrote:
 "Thank you for working with the Oregon Department of Fish and Wildlife to modify your Wildlife Habitat Conservation Management Plan to better meet your needs and the habitat needs for grassland wildlife."
(Id. at 99.)
As stated in the correspondence, both Plaintiffs and ODFW wrote that the Plan was being modified. There is sufficient evidence to conclude that ODFW was following its rule permitting amendments to approved plans, OAR 635-430-0070. That rule requires that the ODFW "follow the procedures in OAR 635-430-0050 [Plan Submission and Review Procedure]" and that the amendments "meet the standards in OAR635-430-0060 [Approval Standards for Plans]." The *Page 11 
rules governing plan submission and review procedure and standards for plans must be followed for approval of an original plan or an amended plan.
In determining whether the changes to Plaintiffs' Plan were according to ODFW "compliance measures" incorporated into the Plan or "simply new plan requirements," the court again looks to the Plan and parties' correspondence. The original approved Plan stated in item 15, Management practices, that "[t]he irrigated pasture in the southeast area of the subject property will remain as fenced. * * * This area will be used for the 10 cows owned by the applicant during calving season to protect the caves. This area will also be used as a rotation area for the cows during the summer." (ODFW's Ex A at 14.) In March 14, 2008, Ardt wrote:
 "We agreed to the following to bring the plan back into compliance:
 "* * * * *
 "Modify the plan to remove livestock grazing from the SE corner pasture (Driveway to property boundary), while enhancing wildlife habitat by planting trees, shrubs, and bunchgrasses (note trees and shrubs will been to be protected from rodent girdling and possibly from wintering mule deer.)
 "* * * * *
 "In the Table below are Tree, Shrub and Bunchgrass Recommendations to pick from for the irrigated SE Corner Pasture Area and around the Pond. Plant at least three different shrub species around the pond * * * along with two tree species and five different shrub species in the pasture area. Within two years, plant 1/3 or more of each of the areas in a combination of trees, shrubs and bunchgrass, in a mosaic pattern or in patches (call if you have other species you want to include or questions regarding specifics that we didn't discuss."
(Id. at 80.) In the modified Plan, item 15, Management practices, stated:
 "This area will be dedicated 100% to livestock free wildlife habitat area and will be planted with trees, shrubs and bunch grasses, per ODFW 3/14/10 recommendation, by May 31, 2009."
(Id. at 103.) ODFW stated that Plaintiffs' failure to "include planting 1/3 or more of each area (the irrigated SE Corner Pasture Area and around the Pond) in a combination of trees, shrubs and *Page 12 
bunchgrasses per ODFW recommendation by May 31, 2009," lead to Plaintiffs' disqualification from the Plan. (Id. at 112-113.)
The court disagrees with ODFW that the changes to the plan were "compliance measures." Prior to the changes, Plaintiffs were permitted to graze 10 cows (livestock) in the irrigated SE Corner Pasture Area. (Id. at 14.) That activity was allowed under the approved Plan. After the changes to the Plan, that same area was described as a "livestock free wildlife habitat area." (Id. at 80.) The required planting was part of the change from grazing to livestock free. (Id.) Those changes were not part of the original plan but were modifications agreed to by the parties to achieve Program goals that apparently changed between 2004 when the Plan including grazing was approved and 2008 when the Plan was modified to prohibit grazing. The modified Plan created at least one new activity, planting, and that activity was one ODFW had to monitor. Rules governing the monitoring of approved plans are found in OAR 635-430-0090. OAR635-430-0090(5) requires that "[i]f, based on its monitoring activities, the Department determines the landowner is not implementing the plan as approved, the Department will notify the landowner in writing and identify the compliance measures that he or she must take within six months." There is no evidence ODFW notified Plaintiffs prior to monitoring the activity. See OAR 635-430-0090. ODFW failed to give Plaintiffs written notification of their alleged failure to comply with the planting requirement prior to disqualifying Plaintiffs from the Program. That was a violation of ODFW's rule.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that ODFW failed to follow its rule for monitoring of approved plans when it failed to give Plaintiffs written notice of Plaintiffs' alleged failure to complete the required plantings and notify them of *Page 13 
required measures that they should take within six months to be in compliance. Now, therefore,
IT IS THE DECISION OF THIS COURT that because ODFW failed to follow its rules the subject property identified as Account 187061 qualifies for the Deschutes County Habitat Conservation and Management program and special assessment.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron March 16, 2011. The Court filed and entered this documenton March 16, 2011.
[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Kelleher. To avoid confusion, the court will use the first name of the individual being referenced
[2] Plaintiffs' counsel clarified the location using Assessor's Exhibit A at 108. The location was a one-half acre portion of the subject property's southeast corner.
[3] References to the Oregon Revised Statute (ORS) and Oregon Administrative Rules (OAR) are to 2007.
[4] Those rules may be found at OAR635-430-0050 and OAR 645-430-0070. *Page 1